**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Phenique Hayes,   Case No. 3:10CV1098

    Plaintiff

v.   **ORDE**R

Asset Recovery Management Group, Ltd., *et al.*,

    Defendants

This suit arises from efforts of the defendants to collect debts which the plaintiff, Phenique Hayes, does not owe. Plaintiff bought a house in Swanton, Ohio, in which Mack (a/k/a Mark) Hines and Vicki Hines, formerly resided. They are the debtors whose unpaid car loans resulted in the collection efforts that led to this suit.

Two lender defendants, Americredit and Chase Auto Financing (Chase) have filed motions to dismiss plaintiff's claims against them under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. and Ohio Consumer Sales Practices Act (OCSPA), 1345.01, *et seq*. For the reasons that follow, the motions shall be granted.[1]

The Chase motion to strike or dismiss (Doc. 57)[2] relates to a loan Chase financed to Mack Hines for a Ford Fusion. The Americredit motion to dismiss (Doc. 63) relates to efforts to collect a car loan which Americredit provided to Vicki Hines on a Kia.

In general, plaintiff's complaint, which she has also filed against other defendants, alleges a repeated series of debt collection contacts, or attempted contacts at her home and by telephone.

---

[1] Plaintiff has already had an opportunity to take more extensive discovery than is customary in the face of a motion to dismiss. Plaintiff has also filed an amended complaint incorporating the results of that discovery.

[2] Chase moves to strike the amended complaint because plaintiff filed it three days past the deadline. Tardiness without prejudice does not justify striking a pleading.

The persons making those contacts were seeking to collect the debts owed by Vicki and Mack Hines on their vehicles. On one occasion a tow truck appeared, as Chase and Americredit also wanted to repossess the Fusion and Kia.

Plaintiff alleges that all the defendants whose agents contacted plaintiff, or sought to contact her, knew, or reasonably should have known, that she was not responsible for the debts.

With regard to Chase and Americredit, however, such knowledge is not a dispositive issue. Their motions challenge whether either the FDCPA or OCSPA applies to them.

Based on what plaintiff's amended complaint alleges, I find that neither statute is applicable.

### A. OCSPA

As to both defendants, the OCSPA does not apply because plaintiff was not a "consumer" who engaged in a "consumer transaction" with a "supplier" as the OCSPA defines those terms:

- (D) "Consumer" means a person who engages in a consumer transaction with a supplier.

- (C) "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

- (A) "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

O.R.C. § 1345.09.

None of these definitions applies to the parties here. The only "transaction" between the plaintiff and the defendants involved their efforts to collect debts she did not owe. Such "transactions" are outside the OCSPA. Defendants are entitled to dismissal as to the OCSPA claims against them.

2

### B. FDCPA

### 1. Factual Allegations

### a. Chase Auto Finance

Plaintiff alleges that on August 10, 2009, she found an envelope addressed to Mack Hines. Plaintiff opened the envelope and found a letter from defendant J.M. Adjustment Services, LLC, acting on behalf of Chase, telling her to call Thelma Sweeney from Chase. Plaintiff called Chase.

The person with whom plaintiff spoke told her she was looking for Mack Hines. Plaintiff stated she did not know Mack Hines, repossession trucks were coming to her house and she did not want to be harassed.

The plaintiff's complaint alleges no other instance of a direct contact by a Chase employee or between herself and a Chase employee with regard to this debt.

She does, however, allege that Chase referred its account to several debt collection agencies: J.M. Adjustment, Asset Recovery Management (d/b/a Diversified Recovery Systems, Inc.), Renaissance Recovery Solutions, Windsor Equity Group and Premier Finance Adjusters of Ohio, Inc.

Chase then assigned the collection effort to Premier; its agent went to plaintiff's home twice, attempting to contact the "customer." The complaint does not indicate whether plaintiff was at home on those occasions or when she learned about those visits.

The complaint indicates a contact by Diversified Recovery. Though the complaint asserts that Chase referred the debt to Renaissance Recovery Solutions, and Windsor Equity Group, it does not allege any contacts by these entities with plaintiff.

Thus, *vis-a-vis* defendant Chase, the complaint alleges two contacts with plaintiff:"the letter left by J.M. Adjustment and ensuing phone conversation and a contact at plaintiff's home by a

Diversified Recovery Systems agent. It also alleges two attempted contacts by Premier Finance Adjusters.[3]

Only one of these contacts was between plaintiff and Chase or someone presumably working at the direct behest of Chase. While contacts by other collection agents were on behalf of Chase, plaintiff has not alleged that the collectors were Chase employees or doing what they did in accordance with instructions from Chase, rather than at the direction of an employer with a separate corporate identity and status from Chase.

### b. Americredit

The complaint alleges that an unidentified tow truck came to plaintiff's home on September 4, 2009. The operator was looking for Vicki Hines, presumably intending to repossess the Kia Ms. Hines had financed through Americredit.

Plaintiff received several calls from defendant Allied Interstate, Inc. The calls, according to the allegations of the original complaint, related to a debt owed by Vicki Hines.

The complaint alleges that Americredit referred Vicki's debt to Asset Recovery Management (d/b/a Diversified). An Asset Recovery collector came to plaintiff's house four months later. Thereafter a collector named Chico left his phone number, which plaintiff referred to the police. They called the number; Chico said he was looking for Vicki Hines. The police told him he had to go to the post office and not return to plaintiff's residence.

Thereafter, two collectors from Diversified came to plaintiff's house. She told them Vicki did not live there. Nonetheless, the men walked around the outside of the premises. Plaintiff called the police. The men told the officer that plaintiff spoke the them through the window as if she were in the ghetto.[4] If he doesn't get respect, he doesn't give it, the man also said.

---

[3] Comparison of the allegations in the original complaint with those in the amended complaint, filed after plaintiff had conducted discovery, indicates that plaintiff first learned about Premier's attempted contacts during the course of discovery after she filed suit.

[4] Plaintiff is African-American.

The complaint also indicates separate contacts by a representative of a unit of Asset Recovery.

The only contact recited in the complaint between an Americredit employee and plaintiff occurred one evening when the agent came to her home around 10 p.m. She called the police, who told the man to leave.

Thus, as with Chase, the complaint alleges only one direct contact between plaintiff and someone working for Americredit. Absent allegations to the contrary, the other agents who contacted the plaintiff must been presumed to have been employees of separate entities, which, though retained by Americredit, acted independently and controlled the conduct of their employees.

## 2. Discussion

In seeking dismissal, both Chase and Americredit argue they are not covered by the FDCPA when acting solely to collect debts owed to them. Defendants also argue that they cannot be held liable vicariously for the acts of independent third parties, even when acting on defendants' behalf, which the FDCPA covers.

I agree.

The FDCPA prohibits certain actions by "debt collectors," "including improper communications, harassing or oppressive behavior, and false or misleading representations. The statute defines "debt collector" as any "person" who uses interstate commerce "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*." 15 U.S.C. § 1692a(6) (emphasis supplied).

Congress did not consider it necessary to extend the restrictions of the statute to creditors acting on their own behalf to collect debts owed to them. Creditors, in the view of Congress, "generally are restrained by the desire to protect their good will when collecting past due accounts, . . ." S. Rep. No. 95-382, at 2 (1977) (reprinted in 1977 U.S.C.A.N.N. 1695, 1696). Third-party debt collectors, on the other hand, "are likely to have no future contact with the consumer and often

5

are unconcerned with the consumer's opinion of them." *Id*. Congress did not intend, accordingly, to impose the restrictions of the FDCPA on first-party creditors.

In response, plaintiff claims that these defendants come within the "false name" exception to the exclusion of first-party creditors from the FDCPA. The provision defining "debt collector" also states that notwithstanding the exclusion of first-party creditors from the definition, the term "debt collector" "includes any [first-party] creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."

To state a claim under the "false name" exception, plaintiff must allege the defendants misrepresented themselves an independent debt collectors during one or more of the abusive actions allegedly violating the FDCPA. *Thomas v. Americredit Fin. Corp.*, 2007 WL 2694176, *3 (N.D. Cal. Sept. 11, 2007)("plaintiff must allege that the defendant misrepresented itself as an independent debt collector *during one of the communications or other actions that he alleges violated the provisions of the FDCPA*.") (emphasis in original).

Plaintiff's amended complaint simply asserts "on information and belief" that the defendants used a false name through the third party "entities on whom [they relied] to collect debts through ministerial acts", and in doing so, they are "using the name of a third person, falsely suggesting that a third person is collecting or attempting to collect such debts."

These allegations, unsupported by any factual allegations that putative third-party debt collectors masqueraded as independent entities to conceal their true identities, do not meet the *Iqbal/Twombly* pleading standards. *Ashcroft v. Iqbal*, ⸺ U.S. ⸺, 129 S.Ct. 1937, 1950 (2009) ("conclusions[] are not entitled to the assumption of truth."); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

As noted, absent a factual basis, there is no reason to infer or conclude, much less anticipate a jury could find, that third-party collectors were anything other than independent entities. Absent

such showing, plaintiff cannot prevail against these defendants as creditors seeking to collect debts by using fake identities. *See Mazzei v. Money Store*, 349 F.Supp.2d 651, *661 (S.D.N.Y. 2004).

## Conclusion

Plaintiff's complaint fails sufficiently to plead causes of action under the FDCPA and OCSPA against Chase Auto Finance and Americredit. This is so, even though plaintiff has had an opportunity to uncover, and plead, facts in support of her contentions.

In light of the foregoing, it is

ORDERED THAT:

1. The motion of Chase Auto Finance to strike or dismiss (Doc. 57), be denied insofar as it seeks to strike plaintiff's amended complaint on the basis of untimeliness of filing and otherwise granted; and

2. The motion of Americredit to dismiss (Doc. 63) be, and the same hereby is granted;

So ordered.

/s/James G. Carr
Sr. United States District Judge